UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

Cheryl Shockley, and
Trevor Hillstrom,

      Plaintiffs,

v.

CreditBox.com LLC,
  d/b/a Credit Box, and
Factor Trust, Inc.,

      Defendants.

Case No. 2021-CV-432

---

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

---

### I. INTRODUCTION

1. This is an action brought by Cheryl Shockley ("Shockley") and Trevor Hillstrom ("Hillstrom") seeking redress for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), committed by CreditBox.com LLC d/b/a Credit Box ("Credit Box"), and by Factor Trust, Inc. ("Factor Trust"), and for violations of Wisconsin's Privacy statute, Wis. Stat. § 995.50, committed by Credit Box. Shockley and Hillstrom seek recovery of actual, statutory and punitive damages, their reasonably incurred costs and attorney fees, as well as declaratory and injunctive relief.

### II. JURISDICTION

2. Jurisdiction of this court is conferred by 15 U.S.C. §1681p (FCRA), 28 U.S.C. §1331 (Federal Question), and 28 U.S.C. §1337 (Commerce), as well as Wis. Stat. § 801.04 (general), and Wis. Stat. § 801.05 (long arm).

-1-

3. Venue in this court is appropriate under 28 U.S.C. §1391 (general venue), as a substantial part of the acts, errors and omissions giving rise to the claims asserted by Plaintiff arose in this district.

## III.  PARTIES

**Cheryl Shockley**

4. Plaintiff Cheryl Shockley is an individual residing in Douglas County, Wisconsin.

5. While Shockley is of normal intelligence, she lacks advanced sophistication in the specific businesses of payday lending and credit reporting.

6. Shockley was and is a "consumer" or "customer" as defined by Wis. Stat. § 421.301(17).

7. Shockley was and is a "consumer" as defined by 15 U.S.C. § 1681a( c ).

8. Shockley was and is a "person" as defined by Wis. Stat. § 990.01(26).

9. Shockley was and is a "person" as that term is used in Wis. Stat. § 995.50, and is further entitled to the protections and remedies of Wis. Stat. § 995.50.

**Trevor Hillstrom**

10. Plaintiff Trevor Hillstrom is an individual residing in Douglas County, Wisconsin.

11. While Hillstrom is of normal intelligence, he lacks advanced sophistication in the specific businesses of payday lending and credit reporting.

12. Hillstrom was and is a "consumer" or "customer" as defined by Wis. Stat. § 421.301(17).

13. Hillstrom was and is a "consumer" as defined by 15 U.S.C. § 1681a( c ).

14. Hillstrom was and is a "person" as defined by Wis. Stat. § 990.01(26).

15. Hillstrom was and is a "person" as that term is used in Wis. Stat. § 995.50, and is further entitled to the protections and remedies of Wis. Stat. § 995.50.

**Credit Box**

16. Defendant Credit Box, is a foreign company engaged in making consumer loans at high interest, and collecting and receiving payments from consumers on those loans.

17. Credit Box is also engaged in a market place where high interest consumer loans are brokered by lead generators acting as loan brokers.

18. Credit Box regularly pays compensation to lead generators for leads to consumers for prospective high interest consumer loans.

19. Credit Box regularly receives - from lead generators - leads of prospective consumers who may be seeking high interest consumer loans from lead generators.

20. Credit Box regularly receives - from lead generators - the personal identifiable information ("PII") and personal financial information ("PFI") of consumers who are likely to or may contract for high interest consumer loans.

21. Credit Box is a sophisticated business, operating throughout Wisconsin.

22. Credit Box is licensed to conduct business in Wisconsin.

23. Credit Box is licensed to make high interest loans to Wisconsin consumers.

24. Credit Box is a "merchant" as defined by Wis. Stat. § 421.301(25).

25. Credit Box is a "person" as defined by Wis. Stat. § 990.01.

26. Credit Box is also a "person" as that term is used in Wis. Stat. § 995.50, and is burdened by and subject to the remedies of Wis. Stat. § 995.50.

27. Per the "Privacy Policy" section of its website, Credit Box acknowledges that it shares the PII and PFI of consumers like Shockley and Hillstrom with third parties.

28. Credit Box is liable for the acts of its employees, agents, and independent contractors under theories of respondeat superior, agency, and vicarious liability.

29. As a business conducting its affairs within the United States generally, and Wisconsin specifically, Credit Box is deemed to know what is lawful and what is unlawful under US and Wisconsin law. *Barlow v. United* States, 8 L. Ed. 728 (1833)("ignorance of the law will not excuse any person, either civilly or criminally"); *Atkins v. Parker,* 472 U.S. 115, 130 (1985)("all citizens are presumptively charged with knowledge of the law"); *Putnam v. Time Warner Cable of Southeastern Wisconsin, LP,* 2002 WI 108, ¶ 13 & footnote 4, 255 Wis.2d 447, 458 (Wis. 2002)("Wisconsin has adopted the mistake of law doctrine").

**Factor Trust**

30. Factor Trust is a corporation incorporated under the laws of the state of Delaware.

31. Factor Trust is a sophisticated business, operating throughout Wisconsin.

32. Factor Trust is a "person" as defined by Wis. Stat. § 990.01.

33. Factor Trust is also a "person" as that term is used in Wis. Stat. § 995.50, and is burdened by and subject to the remedies of Wis. Stat. § 995.50.

34. Factor Trust is a "consumer reporting agency" under the FCRA.

35. Factor Trust maintains consumer reports on thousands of Wisconsin residents, and sells those reports to various third persons, including Credit Box.

36. Factor Trust is a consumer reporting agency as defined by §1681a(f) of the Act, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers credit, to third parties.

37. Factor Trust is a specialty nationwide consumer reporting agency as defined by §1681a (x) of the Act.

38. Factor Trust is NOT a nationwide consumer reporting agency as defined by §1681a (p) of the Act.

39. Factor Trust dispenses such consumer reports to third parties under contract for monetary compensation.

40. Factor Trust is liable for the acts of its employees, agents, and independent contractors under theories of respondeat superior, agency, and vicarious liability.

41. As a business conducting its affairs within the United States generally, and Wisconsin specifically, Factor Trust is deemed to know what is lawful and what is unlawful under US and Wisconsin law. *Barlow v. United* States, 8 L. Ed. 728 (1833)("ignorance of the law will not excuse any person, either civilly or criminally"); *Atkins v. Parker,* 472 U.S. 115, 130 (1985)("all citizens are presumptively charged with knowledge of the law"); *Putnam v. Time Warner Cable of Southeastern Wisconsin, LP,* 2002 WI 108, ¶ 13 & footnote 4, 255 Wis.2d 447, 458 (Wis. 2002)("Wisconsin has adopted the mistake of law doctrine").

### IV.  FACTUAL ALLEGATIONS

**INTRODUCTION TO LEAD GENERATION**

42. The "lead generation market" ("market") is an adjunct to traditional sales and marketing programs.  It allows a company to profit from or monetize those sales leads it cannot or does not want to convert into customers, via several methods.

43. It has found purchase in the high interest, consumer payday loan market.

44. In one method, payday lenders arrange or broker a loan, finding other lenders that are willing to make a short term high interest loan to a consumer, with the brokering lender receiving compensation for brokering the loan.

45. In another method, the payday lender simply sells the "lead" to other prospective lenders, also for compensation.

46. Payday lenders typically - although not always - disclose this practice to prospective consumers in the "terms of service" or "terms of use" sections of their websites.

47. When a consumer seeks a loan from a payday lender, the consumer typically cannot proceed with the application unless they "check a box" on the lender's website that affirms the consumer agrees to the lenders "terms of use."

48. These "terms of use" agreements often purport to bind the consumer to the lead generation practices of the payday lender.

49. Typical lead generation practices include a consumer's purported grant of perpetual rights to the payday lender. These perpetual grants often include perpetual arbitration clauses, perpetual rights to market or sell on the consumer's loan application to other payday lenders, and most astonishingly of all a perpetual right to access a consumer's credit report.

50. However, many of these "terms of use" agreements are in artfully drawn.

51. Oftentimes, payday lenders assume their "terms of use" agreements lawfully grant the lender the perpetual rights described above.

52. In reality, many of these "terms of use" agreements deployed by American, foreign, and tribal payday lenders fall well short of the mark, and do not grant the perpetual rights the lenders think they have.

53. Many of these "terms of use" agreements only grant the payday lender limited or no loan brokering rights.

54. Many of these "terms of use" agreements only grant the payday lender limited or no credit report access rights.

55. Many of these "terms of use" agreements only grant the payday lender limited or no right to sell on credit report access rights.

56. On the otherwise of the equation, many of these "terms of use" agreements grant the payday lender rights that are so expansive that the grants become void for unconscionability.

57. Many of these payday lenders improperly assume that the "terms of use" agreements deployed and adopted by other brokering or selling lenders are cogently and tightly drafted.

58. Many of these payday lenders do not even review the "terms of use" agreements of the brokering or selling lenders before or after buying leads or buying credit report access rights.

59. Many of these payday lenders do not consider their home state's common law or statutory law limits on unconscionable contract terms.

60. Many of these payday lenders do not consider the common law or statutory law limits on unconscionable contract terms provided by the states where the consumers live.

61. Accordingly, many of these "terms of use" agreements employed by lenders are subject to unconscionability challenges, which if successful leave the "terms of use" agreements void.

62. Many of these payday lenders believe that the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and the Gramm Leach Bliley Act ("GLBA"), 15 U.S.C. § 6801 et. seq. do not allow a consumer to reject the sharing or sale if their PII or PFI, once the consumer e-signs the "terms of use" agreements.

63. In reality, both the FCRA and the GLBA allow a consumer - even after he or she signs the "terms of use" agreement - to reject the sharing or sale of their PII and PFI.

64. To make matters worse, most payday lenders do not save records of their transactions in the lead generation marketplace, so these lenders cannot know what rights they may or may not have had in relation to any particular consumer.

65. To make matters even worse, many payday lenders do not maintain the licenses and registrations needed to broker these types of loans, to make these types of loans, or to sell on leads for these types of loans.

66. Such unlicensed activity exposes the lender to a consumer's claim, to a court or arbitrator's ruling, or to a jury finding that the initial agreement between the consumer and the initial payday lender is void, thus rendering any and all later sales of the lead also void, thus rendering any and all later sales of the consumers PII and PFI void and thus unlawful, and thus rendering any and all later credit report pulls unlawful.

67. The Federal Trade Commission ("FTC") is one federal agency that polices this market.

68. For example, LeapLab, LLC sold the PII and PFI of American consumers to third parties, who then used the information to unlawfully debit consumers's bank accounts. The FTC brought an enforcement action which in essence put LeapLabs out of business. *FTC v. SiteSearch Corporation, d/b/a LeapLabs*, No. 2:14-CV-02750 (D. Ax. Dec. 22, 2014).

69. Other enforcement actions include *FTC v. Blue Global, LLC*, No. CV17-02117 (D. Az. July 24, 2017)(defendant enjoined from selling or sharing payday loan leads on any of its 38 websites, where it had previously sold the PII and PFI from 15 million loan applications receiving up to $200.00 per loan application, to parties not in the payday loan business); *FTC v. Sequoia One, LLC*, No. 2:15-CV-01512 (D. Nev. Nov. 2, 2016)(defendant enjoined from selling or sharing payday loan leads).

70. The Consumer Financial Protection Bureau ("CFPB") is another federal agency that polices this market.

71. Enforcement actions brought by the CFPB include *In re Zero Parallel, LLC*, No. 2017-CFPB-0017( Sept. 6, 2017)(enjoining sale of consumer leads - containing PII and PFI of thousands of American consumers - in states that disallow payday lending or payday loan brokering and imposing $100,000.00 penalty).

72. Against this backdrop, plaintiff asserts the claims at bar, seeking damages to be awarded by a jury and equitable relief to be ordered by the Court, as further described below.

**Claims of Cheryl Shockley and Trevor Hillstrom**

73. At all relevant times, Cheryl Shockley was in need of money to pay for her basic needs, including food, clothing, housing, home furnishings, utilities, and to pay existing debts. Her income at all relevant times was limited, and she had few, if any, options for credit.

74. At all relevant times, Trevor Hillstrom was also in need of additional income.

75. Given her lack of choice of lenders, Cheryl Shockley approached various short term, high interest lenders to arrange or obtain short term loans.

76. Trevor Hillstrom also made several applications for short term loans.

77. Both Cheryl Shockley and Trevor Hillstrom began obtaining copies of their consumer credit reports and files as maintained by both nationwide and speciality credit reporting agencies.

78. In 2020, both Cheryl Shockley and Trevor Hillstrom ordered and requested copies of their consumer credit reports and files from Factor Trust, Inc.

79. On September 30, 2020, Factor Trust mailed a copy of Cheryl Shockley's consumer credit report and file to Shockley, and on October 9, 2020, Factor Trust mailed a copy of Trevor Hillstrom's consumer credit report and file to Hillstrom.

80. The information assembled by Factor Trust about Shockley and Hillstrom constitute a "consumer report" under the FCRA, as the information is used for and bears "on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation personal characteristics or mode of living ..." 15 U.S.C. § 1681a(d)(1).

81. The information assembled by Factor Trust about Shockley and Hillstrom constitutes a "consumer report" under the FCRA, as the information is assembled and is used "for the purpose of furnishing consumer reports to third parties ..." 15 U.S.C. § 1681a(d)(1).

82. Factor Trust is a "consumer reporting agency" under the FCRA, as "for monetary fees" Factor Trust "regularly engages in ... the practice of assembling or evaluating consumer credit information or other information on consumers ..." 15 U.S.C. § 1681a(f).

83. The information about Shockley and Hillstrom, held by and released by Factor Trust to Shockley and Hillstrom and to Credit Box, constituted a "consumer report" under the FCRA. 15 U.S.C. § 1681a(d)(1).

84. The information about Shockley and about Hilsltrom, requested by and obtained by various entities including Credit Box, constituted a "consumer report" under the FCRA. 15 U.S.C. § 1681a(d)(1).

85. Factor Trust creates, generates and produces consumer credit reports and files on a regular basis, and derives the information in these reports from large amounts of information it collects and maintains on individuals like Shockley and Hillstrom in a data base called a consumer file.

86. For example, the consumer credit report produced by Factor Trust on September 30, 2020 and mailed to Shockley runs 23 pages, and the consumer credit report produced by Factor Trust on October 9, 2020 and mailed to Hillstrom runs 16 pages and both are full of vast amounts of personal identifiable information ("PII") and personal financial information ("PFI"), including but not limited to their names, addresses, and social security numbers, as well as copious amount of Shockley's and of Hillstrom's financial transaction history running over the course of many years.

87. When Shockley obtained her Factor Trust consumer credit report, she learned that Credit Box had accessed her Factor Trust consumer credit report and file - either in full or in part - **2 times** in July and August of 2019, in spite of the fact that she had never applied for a loan from Credit Box or authorised Credit Box to access her consumer credit report and file.

88. When Hillstrom obtained his Factor Trust consumer credit report, he learned that Credit Box had accessed his Factor Trust consumer credit report and file - either in full or in part - **2 times** in May of 2020 ands also in January of 2019, in spite of the fact that he had never applied for a loan from Credit Box or authorised Credit Box to access his consumer credit report and file.

89. Each time Credit Box accessed Shockley's Factor Trust consumer credit report and file, it obtained her personal identifiable information ("PII") and personal financial information ("PFI"), including but not limited to her name, address, and social security number, as well as her credit score and financial transaction history.

90. Each time Credit Box accessed Hillstrom's Factor Trust consumer credit report and file, it obtained his personal identifiable information ("PII") and personal financial information ("PFI"), including but not limited to his name, address, and social security number, as well as his credit score and financial transaction history.

91. Shockley's agent wrote Credit Box on May 10, 2021, requesting among other things that Credit Box provide information and documentation about its activities and accounts relating to Shockley.

92. Hillstrom's agent wrote Credit Box on May 8, 2021, requesting among other things that Credit Box provide information and documentation about its activities and accounts relating to Hillstrom.

93. Credit Box did not respond to either letter.

94. Factor Trust is also required by state and federal law including the FCRA to adopt and maintain procedures designed to both protect consumer credit information and to limit its obtainment as well as its dissemination to proper parties.

95. Factor Trust has not adopted nor maintained procedures adequately designed to both protect consumer credit information and to limit its obtainment as well as its dissemination to proper parties.

96. Factor Trust is prevented by state and federal law including the FCRA from releasing Shockley's or Hillstrom's consumer credit report and file to third parties absent a permissible purpose under the FCRA, 15 U.S.C. § 1681b(a)(1 through 6).

97. None of the circumstances listed in 15 U.S.C. § 1681b(a)(1 through 6) are present here, as, neither Shockley nor Hillstrom gave "written instructions" to Factor Trust to release their credit reports and files, there is no "credit transaction" or "credit application" initiated by

either Shockley or Hillstrom, and no "business transaction" was initiated by either Shockley or Hillstrom.

98. The initiation of a "credit transaction" or "credit application" or "business transaction" by a third party is not a permissible purpose under the FCRA.

99. Credit Box is required by the FCRA to adopt and maintain procedures designed to limit and restrict its access to consumer credit information, except where a permissible purpose to access the information exists. 15 U.S.C. § 1681b(f).

100. Contrary to its duties under 15 U.S.C. § 1681b(f), Credit Box unlawfully retrieved a complete copy of Shockley's consumer credit report and file as maintained by Factor Trust, and did so 2 times in July and August of 2019.

101. Contrary to its duties under 15 U.S.C. § 1681b(f), Credit Box unlawfully retrieved a complete copy of Hillstrom's consumer credit report and file as maintained by Factor Trust, and did so 2 times in May of 2020 and again in January of 2019.

102. The referenced inquiries have become a permanent component of both Shockley's and Hillstrom's consumer credit reports and files, and are reported to those who ask to review the credit history of either Shockley or Hillstrom.

103. Credit Box agreed and represented in its agreements with the various credit reporting agencies that Credit Box would request and use consumer reports which were obtained from said agencies only for purposes which are lawful under the FCRA as defined under §1681b.

104. Credit Box is and was required by §§ 1681b, 1681n, and 1681q to refrain from obtaining consumer reports from credit reporting agencies under false pretenses, or without a legal basis.

105. At no time material hereto did either Shockley or Hillstrom ever have a relationship with Credit Box, or Factor Trust of the kind specified under §1681b(a)(3)(A) - (F).

106. Shockley has never given written instructions to Credit Box or Factor Trust to obtain and/or release to Credit Box a consumer report of which Shockley was the subject. Hillstrom has never given written instructions to Credit Box or Factor Trust to obtain and/or release to Credit Box a consumer report of which Hillstrom was the subject

107. Neither Credit Box, nor Factor Trust have ever been ordered by a court of competent jurisdiction - pursuant to § 1681b(1) - to obtain or release the information contained in either Shockley's or Hillstrom's consumer credit report and file.

108. Credit Box and Factor Trust each have an affirmative duty to follow reasonable procedures, including those that would prevent the impermissible accessing of consumer reports.

109. Reasonable procedures for users of consumer credit reports and files include restricting the ability of Credit Box and its agents, affiliates and partners to obtain consumer reports on consumers for any impermissible purpose, and include verification by Factor Trust of any "written instruction" from Shockley or from Hillstrom purporting to direct Factor Trust to release either Shockley's or Hillstrom's consumer credit report and file to Credit Box.

110. Factor Trust did not employ reasonable procedures as to Shockley's PII and PFI and the information in her consumer file, as Factor Trust released Shockley's PII, PFI and her consumer credit file to Credit Box - solely based on Credit Box's promise that it had a permissible purpose to obtain the information, and without viewing any "written instruction" from Shockley as is required by the FCRA for such a release of consumer data and consumer information.

111. Factor Trust did not employ reasonable procedures as to Hillstrom's PII and PFI and the information in his consumer file, as Factor Trust released Hillstrom's PII, PFI and his consumer credit file to Credit Box - solely based on Credit Box's promise that it had a permissible purpose to obtain the information, and without viewing any "written instruction" from Hillstrom as is required by the FCRA for such a release of consumer data and consumer information.

112. Credit Box and Factor Trust's illegal, unlawful, and impermissible creation, dissemination, acquisition and / or redisclosure of Shockley's consumer credit report and file violates Shockley's privacy rights under the FCRA and under Wisconsin law, and has impaired Shockley's future access to credit.

113. Credit Box and Factor Trust's illegal, unlawful, and impermissible creation, dissemination, acquisition and / or redisclosure of Hillstrom's consumer credit report and file violates Hillstrom's privacy rights under the FCRA and under Wisconsin law, and has impaired Hillstrom's future access to credit.

114. As a result of the acts alleged above, Shockley has suffered and is entitled to recover damages and equitable relief.

115. As a result of the acts alleged above, Hillstrom has suffered and is entitled to recover damages and equitable relief.

## V.  CAUSES OF ACTION

**COUNT 1.  FAIR CREDIT REPORTING ACT**

116.   Shockley and Hillstrom incorporate by reference all the foregoing paragraphs.

117.   Credit Box willfully and/or negligently violated provisions of the Fair Credit Reporting Act.

Credit Box's violations include, but are not limited to the following:

   (a)   Credit Box violated 15 U.S.C. §1681b by willfully and/or negligently accessing Shockley's consumer credit report and file without a permissible purpose under the Act.

   (b)   Credit Box violated 15 U.S.C. §1681b by willfully and/or negligently accessing Hillstrom's consumer credit report and file without a permissible purpose under the Act.

118.   Factor Trust willfully and/or negligently violated provisions of the Fair Credit Reporting Act.  Factor Trust's violations include, but are not limited to the following:

   (a)   Factor Trust violated 15 U.S.C. §1681a by willfully and/or negligently releasing information from Shockley's consumer credit file and her consumer credit report to Credit Box, where Credit Box had no permissible purpose under the FCRA to access or receive such information.

   (b)   Factor Trust violated 15 U.S.C. §1681a by willfully and/or negligently releasing information from Hillstrom's consumer credit file and his consumer credit report to Credit Box, where Credit Box had no permissible purpose under the FCRA to access or receive such information.

119.   As a result of the above violations of the FCRA, Credit Box is liable to Cheryl Shockley in the sum of Shockley's actual damages, statutory punitive damages, costs, disbursements, and reasonable attorney's fees.

120.   As a result of the above violations of the FCRA, Credit Box is liable to Hillstrom in the sum of Hillstrom's actual damages, statutory punitive damages, costs, disbursements, and reasonable attorney's fees.

121. As a result of the above violations of the FCRA, Factor Trust is liable to Shockley in the sum of Shockley's actual damages, statutory punitive damages, costs, disbursements, and reasonable attorney's fees.

122. As a result of the above violations of the FCRA, Factor Trust is liable to Hillstrom in the sum of Hillstrom's actual damages, statutory punitive damages, costs, disbursements, and reasonable attorney's fees.

**COUNT 2.    WISCONSIN'S PRIVACY STATUTE**

123. Shockley and Hillstrom incorporates by reference all the foregoing paragraphs.

124. The information concerning Shockley and concerning Hillstrom, as contained in the consumer credit reports and files maintained by Factor Trust, includes non public PII such as Shockley's and Hillstrom's social security numbers, and further includes non public PFI such as their respective banking information, and their respective credit scores.

125. The information concerning Shockley and concerning Hillstrom, as contained in the consumer credit reports and files maintained by Factor Trust, is private, and is of a highly personal nature.

126. Similar information concerning any reasonable person of ordinary sensibilities, would also be considered private and of a highly personal nature.

127. The unlawful accessing of that information by Credit Box is highly offensive to Shockley.

128. The unlawful accessing of that information by Credit Box is highly offensive to Hillstrom.

129. Any unlawful accessing and re disclosure of similar information of any reasonable person of ordinary sensibilities, would be highly offensive to any such person.

130. Credit Box acted unreasonably and recklessly in accessing Shockley's and Hillstrom's private information including Shockley's and Hillstrom's respective PII and PFI

131. While neither Shockley's nor Hillstrom's PII and PFI were disclosed to the general public, both Shockley's and Hillstrom's respective PII and PFI were disclosed to an audience that includes companies that neither has ever contracted with, companies that were and are not authorized to receive such information, and companies that neither Shockley nor Hilsltrom have any control over including potentially companies based and operating outside the United States and Wisconsin, and outside the jurisdiction of United States and Wisconsin courts.

132. Credit Box willfully and/or recklessly violated Wis. Stat. § 995.50(2)(a & c), including its prohibition on accessing and then re disclosing Shockley's and Hillstrom's PII and PFI.

133. As a result of the above violations of Wis. Stat. § 995.50, Credit Box is liable to Shockley in the sum of Shockley's actual damages, punitive damages, costs, disbursements, and reasonable attorney's fees, along with any appropriate injunctive relief.

134. As a result of the above violations of Wis. Stat. § 995.50, Credit Box is liable to Hillstrom in the sum of Hillstrom's actual damages, punitive damages, costs, disbursements, and reasonable attorney's fees, along with any appropriate injunctive relief.

## VI.  REQUEST FOR RELIEF

135. **WHEREFORE**, Cheryl Shockley respectfully requests that Judgment be entered as follows:

**Count 1 - as to Credit Box:**

    (a)    actual damages;

    (b)    punitive damages;

    (c)    statutory damages of $1,000.00 per violation;

    (d)    costs and reasonable attorney's fees; and

    (e)    such other and further relief as the court deems just and equitable.

**Count 1 - as to Factor Trust:**

 (a) actual damages;

 (b) punitive damages;

 (c) statutory damages of $1,000.00 per violation;

 (d) costs and reasonable attorney's fees; and

 (e) such other and further relief as the court deems just and equitable.

**Count 2 - as to Credit Box:**

 (a) actual damages;

 (b) punitive damages;

 (c) declaratory and injunctive relief:

 (d) costs and reasonable attorney's fees; and

 (e) such other and further relief as the court deems just and equitable.

136. **WHEREFORE**, Trevor Hillstrom respectfully requests that Judgment be entered as follows:

**Count 1 - as to Credit Box:**

 (a) actual damages;

 (b) punitive damages;

 (c) statutory damages of $1,000.00 per violation;

 (d) costs and reasonable attorney's fees; and

 (e) such other and further relief as the court deems just and equitable.

**Count 1 - as to Factor Trust:**

 (a) actual damages;

 (b) punitive damages;

 (c) statutory damages of $1,000.00 per violation;

 (d) costs and reasonable attorney's fees; and

 (e) such other and further relief as the court deems just and equitable.

**Count 2 - as to Credit Box:**

    (a)    actual damages;

    (b)    punitive damages;

    (c)    declaratory and injunctive relief:

    (d)    costs and reasonable attorney's fees; and

    (e)    such other and further relief as the court deems just and equitable.

## VII.  DEMAND FOR TRIAL BY JURY

137.    Cheryl Shockley and Trevor Hillstrom hereby demand that, to the extent provided by the United States and Wisconsin Constitutions, United States and Wisconsin Statutes, and United States and Wisconsin Common Law, these claims be determined by a jury of their peers.

Dated: September 21, 2021                      electronically signed by Eric Crandall
                                                              Eric Leighton Crandall, Esq.
                                                              **CRANDALL LAW FIRM, S.C.**
                                                               421 West Second Street
                                                               PO Box 27
                                                                New Richmond, WI 54017
                                                               715-243-9996 (p)
                                                                WisconsinConsumerLaw@frontier.com
                                                                Wis. Atty. Lic. No. 1001833

                                                              **ATTORNEY FOR PLAINTIFFS**
                                                               **CHERYL SHOCKLEY AND**
                                                               **TREVOR HILLSTROM**